RUTH D. COZETTE, APPELLEE, v. GERARD J. COZETTE, APPELLANT.

246 N. W. 2d 473

Filed October 27, 1976. No. 40453.

Fred J. Swihart, for appellant.

Albert L. Feldman of Stern, Harris, Feldman, Becker & Thompson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is an action for dissolution of marriage under the provisions of section 42-347 et seq., R. R. S. 1943. The court found that the marriage was irretrievably broken and entered an order dissolving the marriage and dividing the property of the parties. The respondent husband appeals and here contends that he should have been awarded a portion of the 7,828.8 shares of stock of the Guaranty National Bank of Huntington, West Virginia, which was held in the names of the parties as cotenants (whether as tenants in common or as joint tenants is not clear from the record), and which, by the decree, became entirely the property of the petitioner wife. This is the only issue presented for our consideration. We affirm the judgment of the trial court.

The parties were married in 1942 and at the time of the trial had been married for 33 years. Two sons of the marriage were then adults and self-supporting.

Under the terms of the decree the petitioner wife received (1) all the household goods and furnishings, (2) checking and savings accounts standing in her own name, (3) 400 shares of stock of the Huntington Steel and Supply Company, (4) 54 shares of stock of the Northern Natural Gas Company, (5) 144 shares of stock of Conagra, (6) promissory notes of the Christian Missionary Alliance in the amount of $20,000, the principal amount of which upon the death of the petitioner becomes the property of the Alliance, (7) 559.955 shares of stock of the Guaranty National Bank held in her name alone, (8) a 1972 Plymouth automobile, (9) any other personal property in her possession, and (10) the jointly held Guaranty National Bank stock previously mentioned.

The respondent husband was awarded personal prop-

erty in his possession as follows: (1) 2,234 shares of stock of various corporations, the shares of which are publicly traded, (2) an AT&T debenture, (3) various savings and checking accounts, (4) cash in his own safe deposit box, (5) a Beechcraft airplane, (6) Bell System savings account, (7) two life insurance policies on his own life, (8) a 1973 Tempest station wagon, (9) the home of the parties which had been jointly held, (10) 150 shares of AT&T stock, standing in the name of the parties as cotenants, and (11) $25,000 in cash to be paid by the petitioner to the respondent.

No alimony was awarded to either party. The value of the property awarded the respondent by the decree is about $165,000. The net value of the property awarded to the petitioner is about $420,000, of which value about $390,000 consists of the 7,828.8 shares of jointly held bank stock. The respondent is an engineer for Western Electric Company and at the time of trial had been employed by that company for 33 years. His annual salary at the time of trial was almost $25,000. Upon retirement he will receive a substantial pension as well as social security. The petitioner had not been employed to any substantial degree during the course of the marriage, but after the separation of the parties was employed by a religious organization on a part-time basis and was earning about $2,000 a year.

The 7,828.8 shares of bank stock is traceable to the following sources: (1) 66.66 shares, a gift from petitioner's grandmother; (2) 100 shares, a gift from petitioner's father; and (3) 100 shares acquired in 1960 from petitioner's grandmother in exchange for a promise by petitioner to pay an annuity. The sum of $6,034 was paid on this annuity before the death of the grandmother. Dividends from the bank stock were more than sufficient to pay this obligation. By virtue of stock splits and stock dividends the above-mentioned shares multiplied to the total previously set forth. From 1954 to 1974, dividends from the Huntington

Steel Company stock and the bank stock, plus dividends from a trust of the same bank stock of which petitioner was a beneficiary, amounted to about $235,000. From 1954 through 1973, respondent had income from his employment in the amount of $295,555. The family had additional income from the other stocks and bank accounts which have been previously mentioned which had been obtained through the investment of income.

Respondent contends that he should have been awarded 1,848 of the 7,828.8 shares because 60 of the original shares were at one time in his name alone and later transferred to cotenancy and that these shares, increased by the splits and dividends, amount to 1,008 shares. He further contends that he is entitled to an additional 840 shares as his half of the accumulated shares attributable to the original 100 shares acquired in consideration of the promise to pay the annuity.

The parties were unable to agree upon a division of the property. Therefore, it became incumbent upon the court to make such a division as it deemed conscionable and fair under all the facts and circumstances. § 42-366(2), (3), R. R. S. 1943. The trial court was entitled to consider the fact that the respondent's efforts contributed nothing to the acquisition of the bank stock. Even if the 60 shares of the stock were originally placed in respondent's name alone (and the record in our judgment does not justify that conclusion), the court was nonetheless entitled to consider that the source was a gift from the petitioner's family and not acquired through any effort of the parties. Furthermore, the evidence is such that the court could and probably did conclude that it was only because of the income from the stock and the trust that respondent was able to invest and accumulate the substantial amount of personal property standing in his own name and which was awarded to him by the decree. The record further justifies the conclusion (admitted by respondent) that the education of the two

sons was paid for either by gifts from petitioner's family, or income from the bank stock.

The evidence indicates that from 1971 to 1973 respondent contributed only $100 per month to petitioner's support and after that until their separation nothing at all; that his earlier contributions from his own income did not fully support the family and the difference was supplied from the bank dividends income. The record shows that respondent really has no need for the additional income which the shares he claims would give him. In an action for dissolution of marriage, a court may divide property between the parties in accordance with the equities of the situation irrespective of how legal title is held. Fotinos v. Fotinos, 184 Neb. 486, 168 N. W. 2d 698.

The petitioner is awarded the sum of $1,500 for the services of her attorney in this court.

AFFIRMED.