JANIE RAE BUCHE, APPELLANT AND CROSS-APPELLEE, V. JOHN JEFFREY BUCHE, APPELLEE AND CROSS-APPELLANT.

423 N.W.2d 488

Filed May 27, 1988.   No. 86-350.

W. Gerald O'Kief, for appellant.

Forrest F. Peetz of Peetz and Peetz, for appellee.

BOSLAUGH, WHITE, and SHANAHAN, JJ., and GITNICK and GARDEN, D. JJ.

PER CURIAM.

This is an appeal in a proceeding for the dissolution of a marriage. The trial court dissolved the marriage; divided the property and debts of the parties; awarded custody of the two minor children of the parties to the petitioner; awarded child support to the petitioner in the amount of $400 per month, which is reduced to $250 per month if only one child is entitled to support; awarded $2,000 alimony to be paid in two equal payments without interest; and awarded the petitioner $700 in attorney fees.

The petitioner has appealed and contends the trial court erred in dividing the property and the debts, in awarding inadequate child support and alimony, and in the amount of attorney fees allowed. The respondent has cross-appealed and contends the trial court erred in sustaining an objection to the testimony of an expert witness and by including 36 shares of G. F. Buche Company stock as marital property.

The Supreme Court's review of a judgment dissolving a marriage is de novo on the record to determine whether there has been an abuse of discretion. When the evidence is in conflict, the Supreme Court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Gerber v. Gerber*, 225 Neb. 611, 407 N.W.2d 497 (1987). See, also, *Brandt v. Brandt*, 227 Neb. 325, 417 N.W.2d 339 (1988).

The record shows that the petitioner, Janie Rae Buche, and the respondent, John Jeffrey Buche, were married on January 3, 1975. They separated in February 1985.

At the time of the marriage, both parties were employed at the Buche Company's grocery store in Mitchell, South Dakota. The company was founded by the respondent's grandfather in 1905.

The principal assets of the parties are a residence in Ainsworth, Nebraska, purchased in 1984 for $22,700; 36 shares of stock in the Buche Company; an IRA; two automobiles; a camper; a golf cart; and furniture.

The indebtedness of the parties consists of the $6,297 mortgage on the residence; a $17,000 bank loan used in the purchase of the residence; $21,916.22 due the Buche Company for groceries and clothing charged by the parties; $1,000 due for marriage counseling; $150 due J.C. Penney Co.; and $202.18 due Sears.

The trial court assigned one-half of the value of the residence and one-half of the mortgage and bank debt to each of the parties; included 36 shares of the Buche Company stock in the marital estate; and valued the IRA at its current value. Although the value of the residence and the debt attributed to it were divided in half, the entire marital estate was assigned two-thirds to the respondent and one-third to the petitioner.

Each party received an automobile. The Buche Company stock, the IRA, the camper, and the golf cart were assigned to the respondent. The furniture was assigned to the petitioner.

The principal controversy concerns the Buche Company stock, which the trial court valued at $500 per share, and the valuation of the IRA.

Although 36 shares of the Buche Company stock were acquired by the respondent during the marriage, the record shows that they were actually a gift or bequest from his grandfather.

In 1970 or 1971, when the senior Buche died, his stock in the Buche Company was placed in a trust for his five grandsons, one of whom is the respondent. Under the grandfather's bequest, the respondent was allowed to purchase 51 shares of the company stock with funds supplied by the company. Once a

year for 10 years each recipient received a dividend which was used to buy the stock from the trust at $350 per share plus 4 percent interest. Any obligation of the respondent for the purchase of stock has been satisfied and certificates representing his 51 shares have been issued.

The respondent claims that the trial court erred by including 36 shares of Buche Company stock in the marital estate. The respondent relies upon *Sullivan v. Sullivan*, 223 Neb. 273, 388 N.W.2d 516 (1986), and *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982), where we held:

> While we have not heretofore said in exact words how property acquired by inheritance or gift during the marriage should be considered, an examination of our previous decisions discloses that when awarding property in a dissolution of marriage, property acquired by one of the parties through gift or inheritance ordinarily is set off to the individual receiving the inheritance or gift and is not considered a part of the marital estate. . . . An exception to the rule is where both of the spouses have contributed to the improvement or operation of the property which one of the parties owned prior to the marriage or received by way of gift or inheritance, or the spouse not owning the property prior to the marriage or not receiving the inheritance or gift has significantly cared for the property during the marriage.

212 Neb. at 733, 325 N.W.2d at 834.

Furthermore, in *Ross v. Ross*, 219 Neb. 528, 531, 364 N.W.2d 508, 509 (1985), we stated that "if the inheritance can be identified, it should be set off . . . and eliminated from the marital estate to be divided." However, we have also held that "[t]he *Van Newkirk* rule itself does not purport to be an ironclad, rigid rule for all circumstances," *Grace v. Grace*, 221 Neb. 695, 699, 380 N.W.2d 280, 284 (1986), and that " '[w]hile the source of funds brought into a marriage is a consideration in the division of property, it is not an absolute.' " *Id.* at 701, 380 N.W.2d at 285, citing *Ulmer v. Ulmer*, 205 Neb. 351, 287 N.W.2d 685 (1980).

The parties were married in 1975, 3 years after the respondent had begun acquiring the Buche Company stock.

Neither the respondent nor the petitioner contributed any of his or her own money to acquire the stock. There is no evidence that the petitioner "contributed to the improvement or operation of the property" or that she "significantly cared for the property during the marriage." Since the stock is readily identifiable and traceable to the respondent, and because the petitioner does not fall within the exception stated in *Van Newkirk*, we find that the Buche Company stock should not be included as part of the marital estate.

The controversy concerning the IRA relates to its valuation. The account amounts to $17,418.24, but if it was withdrawn at this time and divided between the parties, the proceeds would amount to only $11,418.24. The trial court refused to permit a certified public accountant, called by the respondent, to testify that both an income tax and a penalty would have to be paid if the respondent withdrew the account at this time. Since the account will not be withdrawn, the penalty may be disregarded, but the income tax will have to be paid eventually and is a proper consideration in determining the present value of the account. We find that the IRA should be valued at approximately $13,000 for inclusion in the marital estate.

The adjustments which we have made reduce the valuation of the marital estate to approximately $46,400, of which the petitioner receives $16,000 and the respondent $30,400.

To equalize the property division which the trial court made, the respondent was ordered to pay to the petitioner $6,325 over a period of months. This was in addition to the $2,000 alimony awarded the petitioner. We believe the trial court was correct in ordering the respondent to pay an additional sum to the petitioner, but that it should be considered to be in the nature of alimony rather than a division of property.

Alimony is an allowance for support and maintenance and is a substitute for marital support. *Ball v. Ball*, 183 Neb. 216, 159 N.W.2d 297 (1968). In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Pyke v. Pyke*, 212 Neb. 114, 321 N.W.2d 906 (1982). One consideration is the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children.

*Brown v. Brown*, 199 Neb. 394, 259 N.W.2d 24 (1977).

The respondent was first employed by the Buche Company in 1974, following graduation from high school.

In 1983 the Buche Company purchased a store in Ainsworth, Nebraska, which the respondent managed for 1¹/₂ years. The respondent's gross income for 1983 was $35,950, and $35,380 for 1984.

In April 1985, the respondent moved to O'Neill, Nebraska, and became manager of the advertising department for the Buche Company grocery stores. The respondent was compensated in the following manner: $300 per week salary; and $1,750 quarterly, $500 of which was to be applied to the parties' account at the various stores. Fringe benefits of his position include health insurance for the respondent and his family. In addition, the company has paid $240 per month for the respondent's apartment. The respondent testified there was some agreement that he would repay a portion of the money the company paid on his rent.

Throughout the marriage, the petitioner, who is 30 years of age and in good health, held various jobs, most of which paid minimum wages. The petitioner testified that she had acquired some skills through on-the-job training in the areas of laboratory and x-ray work, bookkeeping, and general office skills. At the time of trial the petitioner was employed by Midwest Appraisals to appraise homes and commercial buildings in Brown County at $3.50 for each parcel appraised.

Because of her inability to find full-time employment in Ainsworth, the petitioner testified that she would be willing to move with her children to Sioux Falls, South Dakota, in order to pursue the possibility of full-time employment and a college education.

We find that the respondent should be ordered to pay the petitioner alimony in the sum of $175 per month for 36 months to assist the petitioner in establishing a new home for herself and the children and for completing further training.

During the marriage the petitioner used her earnings for babysitting, clothing for herself and the children, entertainment, and at times for payments on the family home.

The petitioner contends that the award of child support in

the amount of $400 per month is inadequate, as it is "less than Respondent/Appellee's real ability to pay, and far less than Petitioner/Appellant's needs . . . to support the parties' minor children." In addition to the child support, the respondent was ordered to provide and maintain standard hospital and surgical insurance on both minor children.

"In determining the amount of child support to be awarded, the status, character, and situation of the parties and attendant circumstances must be considered. The financial position of the husband as well as the estimated costs of support of the children must be taken into account . . . ." *Brus v. Brus*, 203 Neb. 161, 164-65, 277 N.W.2d 683, 686 (1979).

"The amount of child support ordered in a dissolution of marriage action is initially left to the sound discretion of the trial court and is reviewed de novo on the record in this court and is affirmed absent an abuse of discretion." *Grace v. Grace*, 221 Neb. 695, 704, 380 N.W.2d 280, 287 (1986); *Lainson v. Lainson*, 219 Neb. 170, 362 N.W.2d 53 (1985).

The respondent testified that he probably could pay $500 per month child support, and the child support guidelines which have been adopted by this court, see, *Brandt v. Brandt*, 227 Neb. 325, 417 N.W.2d 339 (1988), and *Fooks v. Fooks*, 226 Neb. 525, 412 N.W.2d 469 (1987), indicate that the child support should be in excess of $400 per month. We find that the judgment should be modified to increase the child support to $500 per month.

The trial court assigned all of the indebtedness of the parties to the respondent except that relating to the residence property. We agree with that finding and find that in addition to the indebtedness listed in the judgment, the respondent should pay the amounts owed J.C. Penney Co. and Sears. We further find that any mortgage debt remaining after the sale of the parties' residence shall be paid by the respondent, and the petitioner shall not be liable to the respondent for any deficiency on the mortgage after the sale of the property.

We find no error in the allowance of attorney fees made in the district court.

The judgment as modified is affirmed. The appellant is allowed the sum of $750 for the services of her attorney in this

court. Each party shall pay his or her own costs on the appeal.

AFFIRMED AS MODIFIED.